Salvador **RUBIO,** Appellant (Defendant),

v.

**The STATE of Wyoming,**
Appellee (Plaintiff).

**No. 95–293.**

Supreme Court of Wyoming.

May 29, 1997.

Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Assistant Appellate Counsel; and Scott P. Klosterman, Student Intern, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Barbara L. Boyer, Senior Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

TAYLOR, Chief Justice.

Appellant was convicted of first-degree sexual assault and kidnapping. On appeal, appellant contends his conviction rests on the erroneous admission of his statements to police and prosecutorial misconduct during his cross-examination. Appellant also challenges the district court's denial of his motion to transfer the proceedings to juvenile court. Since appellant fails to demonstrate that the district court abused its discretion at any phase of the proceeding, we affirm his conviction and sentence.

## I. ISSUES

Appellant, Salvador Rubio (Rubio), asserts three issues on appeal:

*ISSUE I*

Did the district court err in denying appellant's motion to suppress his statement and in permitting his statement to be used against him at trial?

*ISSUE II*

Did the trial court err when it denied the appellant's motion for a mistrial due to the prosecutor's willful violation of the court's order and improper comments during cross examination?

*ISSUE III*

Did the trial court abuse its discretion when it denied the appellant's motion to transfer his case to juvenile court?

Appellee, the State of Wyoming, phrases the same issues as follows:

I. Did the district court properly deny appellant's motion to suppress the statements he made to law enforcement?

II. Did the trial court abuse its discretion when it denied appellant's motion for a mistrial?

III. Did the trial court abuse its discretion in denying appellant's motion to transfer him to juvenile court?

## II. FACTS

On December 20, 1994, Rubio was two weeks from his sixteenth birthday. He was living in Torrington, Wyoming with his girlfriend's family and paying rent from his wages at John Meyer Potato Company. After leaving work on December 20th, Rubio spent the early evening drinking beer and tequila with various friends. Rubio then drove to the home of Yesenia Vasquez (Vasquez).

Rubio and Vasquez had known each other for approximately one month. She also worked at the potato factory, and they had seen each other several times during social occasions. When Rubio arrived at the Vasquez house, she agreed to go for a drive so he could talk to her about troubles with his girlfriend. The two drove to an apartment complex where another friend lived, but Vasquez did not want to go inside. They remained in the parked car and continued talking. A short time later, Rubio kissed Vasquez and attempted to fondle her breast. Vasquez testified she refused his advances and tried to get out of the car. At that point, Rubio agreed to take her home.

Instead of driving to her home, however, Rubio passed the Vasquez house and drove to a field a short distance away. Vasquez testified that Rubio again made sexual advances. When she attempted to get out of the car, Rubio pulled her back in, ripping her sweater and bruising her neck. Although Vasquez initially tried to push Rubio away,

she eventually ceased to resist in order to prevent further injury. Rubio then forced her to have sexual intercourse.

After the assault, Vasquez agreed to ac-company Rubio to Greeley, Colorado if he would first let her return to her home. Vasquez's mother testified that Vasquez came home crying, with her hair "messed" and her shirt ripped. Immediately upon entering, Vasquez telephoned 911 to report the assault.

Apparently tired of waiting for Vasquez to return, Rubio drove home where the police were waiting to arrest him. Some time between 9:00 p.m. and 10:00 p.m., Rubio was taken to the Goshen County Detention Center in Torrington and placed in a cell where he fell asleep. Around midnight, Rubio was awakened and brought to the office of Sheriff Don Murphy for questioning. Sheriff Murphy and Deputy Kirchhefer read Rubio his *Miranda* rights and informed him he had been accused of rape. After Rubio stated he understood his rights, he signed a form waiving his right to remain silent and to have an attorney present during questioning.

Sheriff Murphy and Deputy Kirchhefer began questioning Rubio. Initially, Rubio stated the sexual intercourse was consensual. After over an hour of questioning, however, Rubio responded affirmatively when asked if he had forced Vasquez to have sex.

Rubio was charged with kidnapping and first-degree sexual assault. Prior to trial, a hearing was conducted to resolve several motions raised by the defense, including: whether the statements made to Sheriff Murphy and Deputy Kirchhefer should be suppressed; whether the State could present evidence regarding a charge of sexual assault in Chicago, Illinois eighteen months earlier; and whether Rubio's motion to transfer the case to juvenile court should be granted. In a decision letter filed May 3, 1995, the district court found that Rubio's statements to the police were voluntary and, therefore, admissible. The district court also denied the motion to transfer the case to juvenile court. Finally, the district court held that evidence concerning Rubio's previous arrest for sexual assault was not admissible under W.R.E. 404(b). The district court's orders in accord with the decision letter were entered on May 10, 1995.

Rubio was tried on May 22–24, 1995 and convicted on both charges. Rubio subsequently was sentenced to no less than sixteen years and no more than twenty years in the state penitentiary. This timely appeal followed.

## III. STANDARD OF REVIEW

■ Prior to the admission of a custodial statement, we require the state to prove by a preponderance of the evidence that the statement was knowingly and voluntarily made. *Burk v. State*, 848 P.2d 225, 232 (Wyo.1993). However, once the trial court determines that the totality of the circumstances demonstrates that the defendant possessed the requisite awareness, we defer to the ruling of the trial court unless the appellant demonstrates an abuse of discretion. *Id.*

■ Also within the discretion of the trial court is the decision to grant or deny a motion for mistrial, including such motions precipitated by a claim of prosecutorial misconduct. *Miller v. State*, 904 P.2d 344, 351 (Wyo.1995); *Hodges v. State*, 904 P.2d 334, 343 (Wyo.1995). Similarly, decisions relating to the transfer of criminal proceedings from district court to juvenile court will not be disturbed absent an abuse of discretion. *Hansen v. State*, 904 P.2d 811, 824 (Wyo. 1995).

■ An abuse of discretion has been described as an error of law committed by the court under the circumstances. *Mayer v. State*, 618 P.2d 127, 131 (Wyo.1980) (*quoting Martinez v. State*, 611 P.2d 831, 838 (Wyo. 1980)). The ultimate issue is whether the trial court could reasonably conclude as it did. *Pearson v. State*, 811 P.2d 704, 707 (Wyo.1991).

## IV. DISCUSSION

### A. MOTION TO SUPPRESS RUBIO'S STATEMENT TO POLICE

■ Rubio claims his immaturity and intoxication precluded a knowing, intelligent and voluntary waiver of his right to be silent and his right to have an attorney present

during questioning. Whether the statements obtained during custodial interrogation are admissible against a defendant, including a juvenile, rests upon an inquiry into the totality of the circumstances surrounding the interrogation. The question is whether the accused in fact, and not merely in form, knowingly and voluntarily decided to forgo his rights to remain silent and to have the assistance of counsel. *Jahnke v. State*, 692 P.2d 911, 923–24 (Wyo.1984); *Fare v. Michael C*, 442 U.S. 707, 724–25, 99 S.Ct. 2560, 2571–72, 61 L.Ed.2d 197 (1979).

> The totality approach * * * mandates * * * inquiry into all the circumstances surrounding the interrogation. This includes evaluation of the juvenile's age, experience, education, background, and intelligence, and into whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights.

*Fare*, 442 U.S. at 725, 99 S.Ct. at 2571–72.

We have recognized that the greatest care must be exercised to assure that the giving of a statement by a juvenile was in fact voluntary and not the product of immaturity, ignorance or coercion. *Jahnke*, 692 P.2d at 923. Pursuant to the prior decisions of this court, the district court conscientiously held a full evidentiary hearing on the matter. *See Hernandez v. State*, 577 P.2d 643 (Wyo.1978) and *Raigosa v. State*, 562 P.2d 1009 (Wyo. 1977). A review of the hearing record reveals no abuse of discretion in the district court's determination.

Rubio submits a list of factors which, he argues, demonstrates that his statements were not a product of a free and deliberate choice. He contends he "was intoxicated, tired, and frightened at the time of the interrogation." Rubio further argues that his immaturity led him to believe that if he agreed with the officers, they would let him go home. Rubio also contends that the absence of a parent or counsel prevented him from understanding the seriousness of his situation.

Neither the intoxication of Rubio at the time the statement was made nor the absence of parent or counsel render a juvenile's statement inadmissible *per se. Stone v. State*, 745 P.2d 1344, 1348 (Wyo.1987); *Jahnke*, 692 P.2d at 923; *Mayer*, 618 P.2d at 129. We review the record to determine whether the district court could reasonably conclude that such factors, given the totality of the circumstances, did not negate Rubio's knowing and voluntary relinquishment of his rights.

Rubio testified he had been drinking and "was sort of like half drunk" while being questioned. However, Dr. Merrell, the psychiatrist called to testify on behalf of Rubio, stated Rubio's history of alcohol abuse indicated a "high tolerance." Dr. Merrell testified that because of the high tolerance, Rubio's reported intoxication did not play a major role in Dr. Merrell's evaluation of Rubio's ability to waive his rights. In addition, Sheriff Murphy testified that Rubio "sat erect" with his "hands * * * folded" and "did not appear to have been drinking * * *." Sheriff Murphy also testified that Rubio told the officers he had been drinking earlier that evening, but was not drunk at that time.

Rubio's claim that his immaturity prevented an understanding of the consequences of his waiver of rights is equally unpersuasive. At the time of his arrest, Rubio was nearly sixteen, had a job and was living with his girlfriend in Torrington. His parents lived in Colorado. Prior to questioning, Rubio was told he was accused of rape. There is no evidence in the hearing record which indicates Rubio asked to speak with his parents or counsel before or during the questioning. Indeed, after the interview, Rubio told Deputy Kirchhefer that "this wasn't the first time that he had been through this."

The most persuasive evidence in the record, however, is Rubio's own testimony. When questioned by his attorney at the hearing, Rubio stated:

> Q Now, you have been sitting in the courtroom here today, and you heard Sheriff Murphy [testify] as to the fact that the officers had read you your *Miranda* warnings, is that correct?
>
> A Yes, sir.
>
> Q Now, when you were read those rights, did you understand those rights as they were read to you?

A Yes.

Q And did you know that you had the right to remain silent?

A Yes, sir.

Q Did you know that you didn't have to talk with them if you didn't want to at that time?

A Yes, sir.

* * *

Q And did you know if you couldn't afford an attorney, that the state would have to get you one?

A Yes, sir.

Q And before you had to talk there?

A Excuse me?

Q Before you had to answer any questions, did you know that you could have an attorney there?

A Yes, sir.

In this case, not only were *Miranda* warnings given, but Rubio repeatedly testified he understood them. We cannot gainsay the reasonableness of the district court's determination in light of a record which demonstrates Rubio's only misunderstanding of rights related to those of Miss Vasquez.

### B. MOTION FOR MISTRIAL

 Rubio also contends the district court erred when it refused to grant a mistrial following alleged prosecutorial misconduct during the cross-examination of Rubio. The extent and conduct of cross-examination of a testifying defendant in a criminal trial is subject to the wide discretion of the trial court in determining the admissibility of evidence. *Armstrong v. State*, 826 P.2d 1106, 1111 (Wyo.1992).

In considering a claim for prosecutorial misconduct, we must review the entire record to determine whether the prosecutor's conduct resulted in substantial prejudice amounting to the denial of a fair trial. *Lindsey v. State*, Wyo., 725 P.2d 649 (1986). In reviewing the record, we must evaluate the state of the evidence and the probability of prejudicial impact on the defendant under the circumstances of the particular case. *Stogner v. State*, Wyo., 674 P.2d 1298, 1302 (1984). Appropriate objections and subsequent curative instructions may cure any error. *Lindsey v. State, supra.*

*Burke v. State*, 746 P.2d 852, 857 (Wyo.1987).

At the pretrial motions hearing, the State argued that it intended to introduce evidence of a separate sexual assault charge which arose approximately eighteen months prior to the Vasquez incident to prove motive and intent. The district court ruled the State had failed to show how the evidence was relevant to the particular motive or intent in the present case and granted Rubio's motion in limine to bar admission of this evidence at trial.

Reference to the Chicago incident, however, did emerge at trial. During Rubio's cross-examination, the prosecutor attempted to ask Rubio about the circumstances surrounding his statement to Sheriff Murphy. The questioning elicited the following unexpected declaration:

Q Did you agree to talk to them without an attorney present?

A That was my first time ever in trouble that day. I just signed everything to get done with it.

The prosecutor continued:

Q That was your first time in trouble?

A No. I mean, that was the first time.

Q Didn't you say this was your first time in trouble?

At that point, Rubio's counsel objected. After a discussion in chamber, the district court ruled that Rubio had opened the door to further questioning regarding his assertion that this was the first time he was in trouble.

When cross-examination continued, Rubio stated that what he meant was he had never been read his rights before. This statement directly contradicted Rubio's testimony during the suppression hearing. As the prosecutor attempted to impeach Rubio's statements with questions regarding Rubio's experience in Chicago, Rubio responded with a remarkable lack of clarity. The following exchange illustrates the tenor of the proceeding:

Q * * * Were you ever taken into custody before * * *[?]

[DEFENSE COUNSEL]: Objection, your Honor. Irrelevant.

THE COURT: Overruled.

Q Were you ever taken into custody before the December 20th incident?

A My mom was with me there.

Q Answer the question. Were you ever taken into custody?

A Well, just for questioning.

Q Just for questioning? Where was that?

A In Chicago.

A short time later, Rubio denied being charged in the Chicago incident. The prosecutor continued:

Q Do you understand what "charged" means?

A "Charged"?

[DEFENSE COUNSEL]: Objection, your Honor.

THE COURT: Overruled.

Q * * * Do you—I want to make sure you understand what is going on. Do you know what charged means?

A Well, ain't there different kind of charges?

Q Tell me what your understanding of that means.

A When they charge you for something at the store or—

Q Tell me what you mean.

A Where they charge you for something at the store.

Q That's clearly not what I mean by charged. Have you ever been taken into custody? Do you understand what I mean by "custody"?

A "Custody"?

Eventually, the prosecutor directly asked whether the detectives in Chicago questioned Rubio about a "Rachel Duran." An immediate objection was lodged and sustained. Further questions regarding the Chicago interrogation elicited a continuing lack of memory on the part of Rubio and objections on the part of his counsel. The series of questions culminated in the following:

Q Could be? There were two detectives there interviewing you?

A I don't know. There was three guys there.

Q What did they look like?

[DEFENSE COUNSEL]: Objection, your Honor.

THE COURT: That's sustained.

Q Sir, in Chicago did they run any tests on you similar to what—

[DEFENSE COUNSEL]: Objection, your Honor.

THE COURT: Sustained.

At the bench, Rubio's counsel moved for a mistrial. The district court denied the motion, but cautioned the prosecutor that he was to "move on." After a short recess, the trial resumed. The prosecutor did not continue the previous line of questioning and the matter was never brought up again.

■ Rubio argues the prosecutor's alleged repeated violations of the district court's order concerning any mention of the prior incident constitutes prosecutorial misconduct. To the contrary, close review of the record as a whole reveals that the questioning was permissible impeachment of Rubio's statement that he had never been "in trouble" before and had never been charged in Chicago. When a defendant testifies on his own behalf, his credibility may be tested like that of any other witness. "[H]e has no right to set forth to the jury facts favorable to him without laying himself open to cross-examination upon those facts." *MacLaird v. State*, 718 P.2d 41, 47 (Wyo.1986).

■ Assuming *arguendo* that the two questions regarding the name of the prior alleged victim and whether similar tests were performed in Chicago exceeded the bounds of proper cross-examination, Rubio fails to demonstrate substantial prejudice sufficient to deprive him of a fair trial. *Burke*, 746 P.2d at 857. Appropriate objections and subsequent curative instructions may cure an error at trial. *Lindsey v. State*, 725 P.2d 649, 657 (Wyo.1986). The district court not only sustained timely objections by Rubio's counsel to these questions, but also instructed the jury regarding the import of objections and the district court's rulings on those objections.

At the outset of trial, the district court instructed the jury:

> If I admit evidence over an objection then you may consider it. But, by admitting it I do not determine the weight or value to be placed on it—that is for you to decide.

> If I sustain an objection and refuse evidence you must not guess as to what that evidence might have been, or the reason for the objection.

The district court also instructed:

> If an attorney hints by a question that facts are or are not true, you should disregard the hint. A question is not evidence and should be considered only if it supplies meaning to the answer.

The district court again reminded the jury of its instruction at the end of trial. As we have noted in the past, "in those cases where the court takes measures to correct an error like that alleged in this case, we must assume no material and prejudicial error was committed." *Madrid v. State,* 592 P.2d 709, 711 (Wyo.1979). In this case, even if the prosecutor exceeded the bounds of impeachment, the result was no substantial prejudice which denied Rubio a fair trial.

## C. MOTION TO TRANSFER RUBIO'S CASE TO JUVENILE COURT

■ As his final issue, Rubio claims the district court abused its discretion when it denied his motion to transfer his case to juvenile court. A determination to transfer proceedings commenced in district court is governed by the factors enumerated in Wyo. Stat. § 14–6–237(b) (1994):

> (i) The seriousness of the alleged offense to the community and whether the protection of the community required waiver;

> (ii) Whether the alleged offense was committed in an aggressive, violent, premeditated or willful manner;

> (iii) Whether the alleged offense was against persons or against property, greater weight being given to offenses against persons especially if personal injury resulted;

> (iv) The desirability of trial and disposition of the entire offense in one (1) court when the juvenile's associates in the alleged offense are adults who will be charged with a crime;

> (v) The sophistication and maturity of the juvenile as determined by consideration of his home, environmental situation, emotional attitude and pattern of living;

> (vi) The record and previous history of the juvenile, including previous contacts with the law enforcement agencies, juvenile courts and other jurisdictions, prior periods of probation to this court, or prior commitments to juvenile institutions;

> (vii) The prospects for adequate protection of the public and the likelihood of reasonable rehabilitation of the juvenile (if he is found to have committed the alleged offense) by the use of procedures, services and facilities currently available to the juvenile court.

After hearing testimony from Sheriff Murphy, Dr. Merrell and Rubio, the district court meticulously addressed each factor in its decision letter, and concluded:

> Each of the factors considered is either neutral or favors this case remaining in district court. The most persuasive factor is that the Defendant had established himself as an independent, emancipated individual, living and working on his own. The serious, intentional nature of these alleged offenses, and the need to assure rehabilitation, also are strong factors to retain this case in district court.

Rubio contends the district court's conclusion unreasonably ignores the testimony of Dr. Merrell regarding Rubio's immaturity. Rubio also asserts the district court did not properly balance the statutory factors in light of the fact that "this was, at most, a date rape."

■ We are not persuaded, and Rubio's attempt to downplay the seriousness of his crime is not well-received. First-degree sexual assault perpetrated on an acquaintance is rape.

Rubio was living independently and working full time on the date of his arrest. While Dr. Merrell opined that Rubio was not as

mature as his outward appearance would imply, Dr. Merrell also testified that Wyoming has limited resources to treat Rubio's juvenile alcoholism. We are satisfied that the district judge carefully considered the evidence before the court and appropriately related the evidence to the statutory factors.

## V. CONCLUSION

Rubio failed to demonstrate that the district court's determinations were not reasonably supported by the record. Rubio's conviction and sentence are affirmed.