**Gary CAPSHAW, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 97–136.**

Supreme Court of Wyoming.

May 13, 1998.

Sylvia L. Hackl, State Public Defender; and Diane Lozano, Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Theodore E. Lauer, Director of the Prosecution Assistance Program; and Cindi Wood, Student Intern for the Prosecution Assistance Program, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

Appellant Gary Capshaw appeals from his conviction for escape from official detention.

We affirm.

## ISSUES

Capshaw presents the following issues for our review:

1. Because appellant was improperly charged with escape, and not attempted escape, did the District Court err when it refused to grant Appellant's Motion For Judgment Of Acquittal After The Jury Verdict?

 a. Does the language of Wyo. Stat. § 6–5–206(a) fail to explain when escape from official detention is a completed act, and no longer an attempt?

 b. Even in the light most favorable to the State, was all the evidence presented inadequate to form the basis for a reasonable inference of guilt beyond a reasonable doubt on the charge of escape from official detention?

2. Did the trial court abuse its discretion when it denied appellant's motion for a mistrial?

 a. Did the prosecutor engage in misconduct by violating the standing court order regarding cross examination of Appellant on convictions older than ten years, and the Wyoming Rules of Evidence?

 b. Did the prosecutor engage in misconduct by violating the standing court order regarding what portions of the taped recording of Appellant's initial appearance could be played, and the Wyoming Rules of Evidence?

 c. Was the district court's error in denying Appellant's motions for a mistrial prejudicial?

## FACTS

On July 8, 1996, Capshaw was arrested on multiple warrants and taken to the detention center in Casper. Later that day, officers from the sheriff's department accompanied Capshaw and several other inmates to the county courtroom, which was located on the

fifth floor of the detention facility, for an initial appearance hearing. While an officer was preparing to escort Capshaw and some other inmates back to the jail area at the conclusion of the hearing, Capshaw ran from the courtroom. The officer radioed the controller for assistance and then pursued Capshaw. Capshaw accessed the stairwell and ran down the stairs. He was apprehended when he reached the first floor of the building.

Capshaw was charged with escape from official detention under WYO. STAT. § 6-5-206 (1997). The trial court held a jury trial in November of 1996, and the jury found that Capshaw was guilty of escape. Capshaw appealed to this Court.

## DISCUSSION

### A. Sufficiency of the Evidence

■ After the trial, Capshaw filed a motion for a judgment of acquittal, and the trial court denied his motion. Capshaw maintains on appeal that the trial court erred by denying his motion for a judgment of acquittal because the trial evidence showed that, although he attempted to escape, he was not ultimately successful in escaping from official detention.

■ When we are reviewing a denial of a motion for a judgment of acquittal, "we accept as true the evidence of the prosecution, together with all logical and reasonable inferences to be drawn therefrom, leaving out entirely the evidence of the defendant in conflict." *Apodaca v. State*, 796 P.2d 806, 807 (Wyo.1990).

A motion for judgment of acquittal is to be granted only when the evidence is such that a reasonable juror must have a reasonable doubt as to the existence of any of the essential elements of the crime. Or, stated another way, if there is substantial evidence to sustain a conviction of the crime, the motion should not be granted. This standard applies whether the supporting evidence is direct or circumstantial.

*Leppek v. State*, 636 P.2d 1117, 1119 (Wyo. 1981) (citation omitted). *See also DeVries v. State*, 909 P.2d 977, 978 (Wyo.1996).

Section 6-5-206(a) states: "A person commits a crime if he escapes from official detention."

"Official detention" means arrest, detention in a facility for custody of persons under charge or conviction of crime or alleged or found to be delinquent, detention for extradition or deportation, or detention in any manner and in any place for law enforcement purposes. "Official detention" does not include supervision on probation or parole or constraint incidental to release on bail[.]

WYO. STAT. § 6-5-201(a)(ii) (1997). The Wyoming statutes do not define the word escape or explicitly delineate between escape and attempted escape. WYO. STAT. § 6-1-301(a) (1997) states that a person is guilty of an attempt to commit a crime if:

(i) With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime; or

(ii) He intentionally engages in conduct which would constitute the crime had the attendant circumstances been as the person believes them to be.

According to BLACK'S LAW DICTIONARY 544 (6th ed.1990), escape means:

Leaving physical confinement without permission. The departure . . . out of custody of a person who was lawfully imprisoned before he is entitled to his liberty by the process of law. . . . The voluntary departure from lawful custody by a prisoner with the intent to evade the due course of justice.

The United States Supreme Court has stated that "courts and commentators are in general agreement that [escape] means absenting oneself from custody without permission." *United States v. Bailey*, 444 U.S. 394, 407, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). *See also United States v. DeStefano*, 59 F.3d 1, 4 (1st Cir.1995).

A Washington court of appeals distinguished between the crimes of escape and attempted escape in *State v. Bryant*, 25

Wash.App. 635, 608 P.2d 1261 (1980). In that case, Bryant dashed from the courtroom during his probation revocation hearing. 608 P.2d at 1262. The prosecuting attorney pursued Bryant through two hallways and down a flight of stairs before he apprehended him. *Id.* Bryant argued that, because his escape was unsuccessful, "his actions arose only to the dignity of an attempt to escape." *Id.* The court of appeals disagreed with Bryant. *Id.* It held:

> Once he removed himself from the Deputy Sheriff's physical restraint, the crime of escape was complete. Although ultimately unsuccessful, his action was more than a "substantial step" toward escape.... An escape conviction does not depend upon the ultimate success of the defendant's flight.

608 P.2d at 1262–63. *See also Maynard v. State,* 652 P.2d 489 (Alaska Ct.App.1982).

In this case, Capshaw ran from the courtroom at the conclusion of his initial appearance hearing. He was immediately pursued by an officer who radioed the controller for assistance. Capshaw accessed a stairwell and raced down four flights of stairs before he was apprehended on the first floor by an officer who had responded to the radio broadcast for assistance. Capshaw's actions involved more than a substantial step toward escape. Although Capshaw was apprehended within a very short time, his brief absence from custody was sufficient to complete the crime of escape from official detention.

Capshaw claims that the jury was not convinced beyond a reasonable doubt that he was guilty of escape rather than attempted escape. We disagree. During its deliberations, the jury sent a note to the judge, asking: "What is the difference between an escape & attempted escape[?] Should we be considering the difference?" The trial court advised the jury that it should not consider the difference: "The defendant is charged with escape, not with attempted escape. The issue is whether the elements of the charge of escape have been proved beyond a reasonable doubt." The following exchange occurred between a juror and the trial court:

[JUROR]: May I ask a question? Did you say we're not to consider the difference between attempted escape and escape?

THE COURT: Yes. He's only charged with escape, not with attempted escape.

The jury was simply trying to clarify which law it should be applying. The trial court appropriately advised the jury about the law of the case, and the jury later returned a verdict of guilty on the escape charge. The evidence presented at the trial was sufficient to support the jury's verdict. The trial court did not, therefore, err by denying Capshaw's motion for a judgment of acquittal.

**B. Mistrial Motions**

 Capshaw contends that the trial court abused its discretion when it denied his two motions for a mistrial. He based his mistrial motions upon two separate claims of prosecutorial misconduct. The trial court has broad discretion in determining whether to grant or deny a motion for a mistrial. *Rubio v. State,* 939 P.2d 238, 241 (Wyo.1997).

> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did.

*Hilterbrand v. State,* 930 P.2d 1248, 1250 (Wyo.1997). The abuse of discretion standard applies even when the defendant bases his motion for a mistrial upon a prosecutorial misconduct claim. *Rubio,* 939 P.2d at 241.

> In considering a claim of prosecutorial misconduct, we must review the entire record to determine whether the prosecutor's conduct resulted in substantial prejudice amounting to the denial of a fair trial. In reviewing the record, we must evaluate the state of the evidence and the probability of prejudicial impact on the defendant under the circumstances of the particular case. Appropriate objections and subsequent curative instructions may cure any error.

*Burke v. State,* 746 P.2d 852, 857 (Wyo.1987) (citations omitted). *See also Rubio,* 939 P.2d at 243.

During the trial, the prosecutor was advised that Capshaw would testify. The prosecutor asked the trial judge about the extent to which he could question Capshaw about his prior bad acts.

[PROSECUTOR]: ..., Judge, I've been advised that the defendant is going to testify. I want to make sure, I guess, that I am okay as far as what prior bad acts I can go into for cross-examination. It's my understanding I can go back to any felonies he's been convicted of for the last 10 years; is that right?

[DEFENSE COUNSEL]: I think he can ask if he's been convicted, and that's the extent of it; is that right?

THE COURT: I think he can ask if he has had any felony convictions in the last 10 years and what those were for.

During the cross-examination, the prosecutor asked Capshaw about a 1994 conviction. He then proceeded to question Capshaw as follows:

Q All right. And then in 1986, you also had a conviction for a felony; is that correct?

A In '86?

Q Yes, sir.

A I think it was '85.

Q I think your conviction was in January of '86[.]

The defense counsel objected and moved for a mistrial because the conviction had occurred more than ten years before the trial. The prosecutor withdrew the question, and the trial court denied Capshaw's motion for a mistrial.

Capshaw claims that a mistrial was warranted because the prosecutor violated a standing court order and W.R.E. 609 when he questioned Capshaw about the January 1986 conviction.[1] W.R.E. 609(a) allows a party to attack a witness' credibility by questioning the witness about his prior felony convictions. *Porth v. State*, 868 P.2d 236, 241 (Wyo.1994). Evidence of a conviction is not, however, "admissible if a period of more than ten years has elapsed since the date of the

conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date." W.R.E. 609(b).

Capshaw's January 1986 conviction occurred more than ten years before his November 1996 trial. Capshaw has not presented evidence, however, which indicates that he was released from confinement more than ten years before the trial date. In fact, the record implies otherwise. Capshaw was convicted on January 28, 1986, of receiving stolen property and was sentenced to serve a term of not less than four years nor more than six years in the Wyoming State Penitentiary. The Wyoming Supreme Court affirmed his conviction in 1987. *Capshaw v. State*, 737 P.2d 740 (Wyo.1987). Capshaw was discharged from parole in January 1989. Although the date that he was released from confinement is not revealed in the record, it is logical to assume that he served more than ten months on a four- to six-year sentence and that he was incarcerated past November of 1986. It is not clear, therefore, that the prosecutor violated W.R.E. 609 when he questioned Capshaw about his January 1986 conviction.

Further, Capshaw has not shown that he was prejudiced by the prosecutor's questions about the 1986 conviction. The jury was informed only that Capshaw had been convicted of a felony in 1986; it was not apprised of the nature of the felony. The fact that Capshaw had been incarcerated several times was already before the jury. Capshaw admitted to the 1994 conviction. The defense counsel stated in his opening argument that Capshaw was not "an angel" and that he had previously been in jail and in the penitentiary. Under these circumstances, the vague testimony about the 1986 conviction did not substantially prejudice Capshaw.

Capshaw also argues that the trial court abused its discretion by denying his motion for a mistrial after the prosecutor played inadmissible portions of an audio tape for the jury. The audio tape contained a

---

1. The record does not suggest that the trial judge intended to deviate from W.R.E. 609 when he ruled on the extent to which the prosecutor could question Capshaw about his prior convictions. Our discussion concerning W.R.E. 609 is, therefore, dispositive on this issue.

recording of the court hearing from which Capshaw escaped. The prosecutor and the defense counsel discussed the admissibility of the audio tape with the trial judge prior to it being played for the jury. During that discussion, the defense counsel argued that the portions of the tape which contained references to the charges for which Capshaw was being held on July 8, 1996, should not be played for the jury because the evidence was prejudicial and irrelevant. The trial judge ruled: "I don't think we should get into the matter of the charges or prior convictions, if anybody mentioned that on the tape. But I would allow the rest of it in as far as the amount of the bond."

Despite the trial court's ruling, a portion of the tape which referred to a charge of misdemeanor possession of marihuana was apparently played for the jury. The defense counsel objected and moved for a mistrial. The trial court denied the motion and directed the attorneys to leave the courtroom and properly prepare the tape to be heard by the jurors.

The record is not clear as to what the jurors actually heard because there apparently was some problem with the audibility of the tape. Even if we were to assume, however, that the jury heard that Capshaw had been charged with misdemeanor possession of marihuana, Capshaw has not shown that he was substantially prejudiced by the evidence. The jury was already aware that Capshaw had been arrested on multiple warrants, including conspiracy to distribute a controlled substance and failure to appear for a preliminary hearing. The fact that the jury may have been informed that one of the several charges against Capshaw was a comparatively minor possession-of-marihuana charge did not prejudice him. The trial court did not abuse its discretion when it denied Capshaw's motions for a mistrial.

Affirmed.