**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Rafael GONZALEZ,
Defendant-Appellant.**

No. 84–1052.

United States Court of Appeals,
Tenth Circuit.

July 31, 1986.

Rehearing Denied Sept. 3, 1986.

Paul Morris (Stephen R. Rosen, with him on briefs), Miami, Fla., for defendant-appellant.

Donn F. Baker, U.S. Atty. (Roberta M. Klosiewicz, Asst. U.S. Atty., with him on brief), Muskogee, Okl., for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, LOGAN, Circuit Judge, and CARRIGAN, District Judge.*

LOGAN, Circuit Judge.

Defendant, Rafael Gonzalez, appeals his convictions for conspiracy to import cocaine in violation of 21 U.S.C. §§ 952(a), 960 and 963, and conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. He argues that the district court incorrectly instructed the jury on withdrawal from a conspiracy and that the court should have ruled as a matter of law that he was innocent of the charge because he had withdrawn. Defendant also asserts that the court should have polled the jury to determine whether they had read or were influenced by a local newspaper article on the trial. We affirm the convictions.

## I

Defendant admitted during trial that he agreed to be involved in the conspiracy, R. III, 409–10, although he stated that he first learned the plan was to import drugs rather than "illegal contraband" on a plane flight he took in the vicinity of Idabel, Oklahoma in April 1983. R. III, 393–95. He does not challenge the sufficiency of the evidence of the conspiracy. Instead, his defense is based on his contention that he withdrew from the conspiracy.

The indictment charged a conspiracy existing only from March 1983, to about April 15, 1983. It is clear that defendant participated in overt acts in furtherance of the conspiracy during this period. He accompanied an alleged coconspirator, Cecil Ford, to Oklahoma; during this trip Ford arranged construction of a private airstrip for smuggling cocaine; he was present while work was done on the airstrip; and he accompanied Ford and a pilot in a test flight to the airstrip, where the plane crashed during a landing attempt. The ill-fated flight occurred sometime around April 15, 1983. Defendant contends that he withdrew from the conspiracy immediately after the plane crash.

The contested withdrawal instruction said:

A defendant who is a member of a criminal conspiracy may withdraw from the conspiracy without criminal liability before the commission of any overt act in furtherance of the conspiracy. In order to effectively withdraw before the commission of an overt act, a conspirator must make a complete disclosure to proper authorities or effectively communicate his withdrawal to all other co-conspirators.

However, once an overt act in furtherance of the object of a conspiracy has been committed, withdrawal is no longer available as a defense to the conspiracy. R. III, 491.

Defendant argues that it was wrong to say a coconspirator cannot withdraw once *any* coconspirator has committed an overt act. But a person is guilty of conspiracy if he agrees with one or more other persons to violate the law, and then any one of the conspirators commits an overt act in furtherance of the object of the agreement. *See United States v. Kendall*, 766 F.2d 1426, 1431 (10th Cir.1985). Once any conspirator commits such an overt act, the crime of conspiracy is complete; and no member of the conspiracy can withdraw from that crime.[1] Effective withdrawal is

---

* Honorable Jim R. Carrigan, United States District Judge for the District of Colorado, sitting by designation.

1. Under the Model Penal Code, if a withdrawal is accompanied by actions thwarting the success of the conspiracy, and those actions manifest a complete and voluntary renunciation of crimi-

nal purpose, a defendant will have an affirmative defense for prewithdrawal crimes. *See Model Penal Code and Commentaries* §§ 5.03(6), 5.03(7), § 5.03 comments 6–7, at 456–74 (Official Draft and Revised Comments 1985). This situation is not present here.

The Model Penal Code designates this type of withdrawal as "renunciation." It uses the term

limited to future crimes the remaining conspirators might commit. *Glazerman v. United States*, 421 F.2d 547, 551–52 (10th Cir.1970); *see also United States v. Read*, 658 F.2d 1225, 1232 (7th Cir.1981); W. La-Fave & A. Scott, *Handbook on Criminal Law* § 62, at 486 (1972); Note, *Withdrawal from Conspiracy: A Constitutional Allocation of Evidentiary Burdens*, 51 Fordham L.Rev. 438, 441–45 (1982).

■ Defendant attempts reliance on our discussion of withdrawal in *United States v. Parnell*, 581 F.2d 1374 (10th Cir.1978), in which we stated: "In order to withdraw from a conspiracy an individual must take affirmative action, either making a clean breast to the authorities or communicating his withdrawal in a manner reasonably calculated to reach co-conspirators." *Id.* at 1384 (citations omitted). Although this rule is correct, it is no aid to Gonzalez. Even adequate communication of his withdrawal could not absolve him of the earlier completed conspiracy.[2]

■ In *Parnell*, because we found that there had been no withdrawal, we did not go on to ask what withdrawal would have accomplished. As noted above, when a withdrawal does occur, in the sense of disassociation from the acts of a conspiracy, the withdrawing conspirator is exonerated only with respect to future acts. Gonzalez was indicted only for acts he committed before his April 1983 withdrawal, and his withdrawal could not exonerate him with respect to those acts. There is no suggestion in *Parnell* to the contrary.[3]

"abandonment" to refer to a mere ending of participation. *Id.* § 5.03 comment 6, at 456. The commentary to the Model Penal Code questions whether a mere attempted thwarting, or an attempted thwarting coupled with notification of authorities, should constitute an exculpatory renunciation. *Id.* at 458–59.

2. Defendant's withdrawal from the conspiracy did start the running of the statute of limitations as to him. He cannot be prosecuted—for the agreement itself or for acts committed before the withdrawal in furtherance of its object—after the statute runs. *See United States v. Read*, 658 F.2d 1225, 1232–33 (7th Cir.1981). But that is not a problem here.

## II

Defendant next argues that the trial court should have granted his request that the jury be polled to check for prejudice from a news article published in the Muskogee Daily Phoenix. The article appeared on page three of the newspaper at the beginning of the local news section and purported to be a report of the trial in progress. It apparently described the trial and discussed evidence the jurors had already heard; it did not report material that the jurors had not seen or heard. The trial judge examined the article and, without stating specific reasons, refused to poll the jury.

Although the trial court has a duty to protect the jury from prejudicial events, *see Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966), and to investigate any potential prejudice that may have occurred, *see United States v. Beitscher*, 467 F.2d 269, 274 (10th Cir. 1972), a refusal to poll is not reversible error absent a clear abuse of discretion. *See, e.g., United States v. Carrodeguas*, 747 F.2d 1390, 1395 (11th Cir.1984); *United States v. Alley*, 661 F.2d 718, 721 (8th Cir.1981); *United States v. Grande*, 620 F.2d 1026, 1031 (4th Cir.1980); *see also United States v. Sutton*, 732 F.2d 1483, 1494 (10th Cir.1984) (minimal inquiry into threatening phone calls received by juror held sufficient).

■ Even if the headlines or conclusions drawn by the newspaper article were in error, we would find no abuse of discretion

3. The suggestion in the jury instruction that Gonzalez had to communicate his withdrawal to "all" conspirators was improper. *See United States v. United States Gypsum Co.*, 438 U.S. 422, 463–64 & n. 37, 98 S.Ct. 2864, 2886–87 & n. 37 (1978); *Parnell*, 581 F.2d at 1384. But, because Gonzalez was not charged with any crimes occurring after his purported withdrawal, this error was harmless. *See* 28 U.S.C. § 2111; Fed.R. Crim.P. 52(a); *United States v. Brasseaux*, 509 F.2d 157, 161–62 (5th Cir.1975) (slight error in conspiracy instruction found harmless).

in the court's action. The trial judge admonished jurors five times during recesses that they were not to discuss the case with anyone, allow anyone to discuss the case with them, or make any independent investigation. They were admonished twice not to read or listen to any account of the trial. Although we would prefer to have an explanation of why the judge refused to grant the defendant's request for a poll, under the circumstances we cannot call the refusal an abuse of discretion.

AFFIRMED.