**Robert AREVALO, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 95–130.

Supreme Court of Wyoming.

May 19, 1997

Sylvia L. Hackl, State Public Defender; Deborah Cornia, Assistant Public Defender; Gerald M. Gallivan, Director, Defender Aid Program; Peter C. Silva, Student Intern; and Kent R. Brown, Student Intern., for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Kimberly A. Baker, Assistant Attorney General, for Appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN,* and LEHMAN, JJ.

TAYLOR, Chief Justice.

Having agreed to help his cousin "get back" at an imagined enemy, appellant smashed a beer bottle against the ear of that "foe" from behind, causing serious bodily injury. Subsequently convicted of aggravated battery, *inter alia,* appellant claims the district court erred in permitting improper prosecutorial remarks during closing argument and complains that his cousin was only convicted of simple battery for the same course of conduct. Holding prosecutorial comments to have been fair and the jury justified in convicting appellant and his cousin of different offenses, we affirm.

## I. ISSUES

Appellant, Robert Arevalo (Arevalo), states three issues:

I. Applying the harmless error standard of review, was Mr. Arevalo denied his right to a fair trial when the prosecutor made improper remarks in her closing argument?

II. Applying the plain error standard of review to the remaining statements of the prosecutor, was Mr. Arevalo denied his right to a fair trial when the prosecutor made improper remarks in her closing argument?

III. Did the jury's finding that a particular object used in a particular manner is not a deadly weapon, preclude the determination that the same object used in the same manner at the same time is a deadly weapon, in finding a second defendant guilty of a greater offense?

The State articulates essentially the same issues:

I. Whether statements made by the prosecutor during closing argument deprived appellant of a fair trial?

II. Whether appellant's aggravated battery conviction should be reversed simply because his co-defendant was convicted of misdemeanor battery?

## II. FACTS

On December 31, 1993, Scott Smothers (Smothers) initiated an unprovoked attack upon Spencer Kukuchka (Kukuchka), throwing five punches before Kukuchka responded and broke Smothers' nose. Nine months later, Smothers and his cousin, Arevalo, were busy drinking at a party in a small house just outside of Sheridan, Wyoming. When Kukuchka showed up with some friends, Smothers let a comrade in on his plans to "bash" Kukuchka, while Arevalo attempted to recruit additional help for the effort "to get [Kukuchka] back for" breaking Smothers' nose. Smothers and Arevalo conversed in hushed tones, gesturing toward Kukuchka, while Arevalo repetitively gripped and wiped off a beer bottle.

Kukuchka was then lured into the front yard by Smothers on the pretense of discussing their differences. Meanwhile, Arevalo went out the back door, circled around behind Kukuchka and smashed a beer bottle

* Chief Justice at time of oral argument.

against the side of Kukuchka's skull. Kukuchka, bleeding profusely, looked to the ground fearing his ear had been cut off, when Smothers broke a second beer bottle on top of Kukuchka's head. Following a brief melee, Arevalo said to Kukuchka: "I am sorry. I had to do it for my cousin."

Kukuchka was taken by friends to a hospital for treatment. The gash inflicted by Arevalo came within "½ inch or less" of severing the internal jugular vein and common carotid artery, either of which injury, according to Kukuchka's physician, could well have occasioned death or hemiplegia. Neither Kukuchka nor the physician discovered the injury from Smothers' blow until several hours after Kukuchka left the hospital, when he felt a lump on the top of his head and found several pieces of broken glass nestled in his hair.

A Sheridan County jury found both Arevalo and Smothers guilty of conspiracy to commit battery, also convicting Arevalo for aggravated battery while finding Smothers guilty only of misdemeanor battery. A timely notice of appeal followed.

### III. STANDARD OF REVIEW

■ Claims of prosecutorial misconduct are settled by reference to the *entire* record and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial. *King v. State,* 780 P.2d 943, 951 (Wyo.1989). Similarly, the propriety of any comment within a closing argument is measured in the context of the *entire* argument. *Virgilio v. State,* 834 P.2d 1125, 1127 (Wyo. 1992). A trial court's rulings as to the scope of permissible argument will not be disturbed absent a "clear or patent" abuse of discretion. *Mayer v. State,* 618 P.2d 127, 132 (Wyo.1980). Even then, reversal is not warranted unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict. *Trujillo v. State,* 750 P.2d 1334, 1337 (Wyo.1988) (*quoting Jones v. State,* 735 P.2d 699, 703 (Wyo. 1987)). Failing to timely object to an improper closing argument, the appellate threshold for reversal is "a substantial risk of a miscarriage of justice." *Dice v. State,* 825 P.2d 379, 384 (Wyo.1992).

■ The capacity of this court to require jury verdicts which are logically consistent in the strictest sense of the term has clear limitations predicated on the sanctity of a jury's deliberative processes and the verdicts thereby produced. *Lessard v. State,* 719 P.2d 227, 231 (Wyo.1986). When the issue is one of consistent verdicts between two similarly situated defendants and a single course of events, we focus upon questions of evidentiary identity and, ultimately, whether the evidence establishes guilt beyond a reasonable doubt. *Schuler v. State,* 668 P.2d 1333, 1342 (Wyo.1983).

### IV. DISCUSSION

To the jury, Arevalo admitted the material elements of an aggravated battery while failing to effectively dispute an expert witness' characterization of the resultant injuries as serious, if not life threatening. In that light, Arevalo's fairness challenge is particularly specious because all of the alleged prosecutorial misconduct occurred during the State's rebuttal case and closing argument, neither of which likely influenced a jury verdict which was virtually preordained by Arevalo's admissions.

#### A. PROSECUTORIAL CONDUCT SUBJECT TO TIMELY OBJECTION AT TRIAL

Arevalo lodged contemporaneous objections at trial to prosecutorial statements which he alleged to have (1) injected the prosecutor's personal belief as to the guilt of the accused; (2) bolstered the credibility of a rebuttal witness; and (3) misstated the law as to the necessary quantum of proof on the issue of what constitutes a deadly weapon. Having thus preserved his record, Arevalo need only show that at least one of his objections was warranted and, but for the statement objected to, a reasonable possibility existed that he might have won a more favorable verdict.

■ In his closing argument, Arevalo's counsel admitted that his initial assessment of the case had suffered from some of "the same assumptions that [the prosecutor] made in prosecuting this trial." In her rebuttal,

the prosecutor answered this argument: "[Defense counsel] indicated that * * * he changed his mind about his client's guilt. I didn't."

It is improper for a prosecutor to assert personal beliefs as to matters in issue. *Browder v. State,* 639 P.2d 889, 893 (Wyo. 1982). The prosecutor transgressed this rule. However, her error was isolated, in direct response to the argument of defense counsel, and cured by the district court's immediate admonition to the prosecutor, in hearing of the jurors, that she should "stick to the facts. * * * Your opinions don't matter. The Jury will draw their own conclusions." Even without such a curative colloquy, we have previously held an occasional "I don't think so" or "I have made up my mind," to be inoffensive, particularly when the "appellant opened the door and the prosecutor merely closed it." *Freeze v. State,* 662 P.2d 415, 418 (Wyo.1983); *Browder,* 639 P.2d at 895. This prosecutorial comment summoned no prejudice to Arevalo's case.

■ In her rebuttal case, the prosecutor called three witnesses, one of whom was a deputy sheriff. In his closing argument, counsel for Arevalo's co-defendant proceeded to attack "police reports," suggesting that prosecutorial witnesses had been coached with copies of those not "exactly accurate" reports. In rebuttal, the prosecutor argued that because the deputy sheriff had quickly found and arrested the defendants, he was competent and, the jury might infer, capable of writing accurate reports. Arevalo objected and his co-defendant moved for a mistrial, which was denied. Now, relying on *United States v. Ludwig,* 508 F.2d 140, 143 (10th Cir.1974), Arevalo scores the prosecutor for personally vouching for the credibility of the deputy sheriff.

*Ludwig* stands for the proposition that a prosecutor may not, even in response to defense arguments, personally vouch for the credibility of a witness who is a peace officer, thus improperly placing **both** the prosecutor's personal integrity and that of the peace officer " 'on the scales.' " *Id. (quoting United States v. Martinez,* 487 F.2d 973, 977 (10th Cir.1973)). *Ludwig,* however, involved "emphatic and personalized vouching," of a

quality not found here. *Ludwig,* 508 F.2d at 143. *Ludwig* has also been quantitatively limited by *United States v. Lane,* 574 F.2d 1019, 1021 (10th Cir.), *cert. denied,* 439 U.S. 867, 99 S.Ct. 193, 58 L.Ed.2d 177 (1978) so as to require a "substantial" amount of misconduct in order to warrant reversal.

Here, the prosecutor merely pointed out that the deputy sheriff had efficiently located the defendants (within hours of the incident) and asked the jury to infer that the deputy sheriff was, therefore, likely competent and able to write an accurate report. Because testimony from both defendants confirmed the material portions of the deputy sheriff's report, the prosecutor's argument went to the non-issue of that report's accuracy. Like the *Martinez* court, we conclude that the prosecutor's comments were "not as strong as counsel suggests." *Martinez,* 487 F.2d at 977. We detect neither "substantial" nor "emphatic and personalized vouching" for the officer, hence we are unable to see that Arevalo might have enjoyed a more favorable outcome without the prosecutor's statements. *Lane,* 574 F.2d at 1021; *Ludwig,* 508 F.2d at 143.

■ Finally, Arevalo's counsel objected when the prosecutor asserted that her burden was not to show that Arevalo knew the bottle used would break, only "that it could cause death or bodily injury by striking somebody in the back of the head." Upon objection, the district court cautioned the jury that they were to determine the definition of a deadly weapon by reference to the court's instructions rather than argument of counsel. Jury Instruction No. 5 reads as follows:

"Deadly weapon" means but is not limited to a firearm, explosive or incendiary material, motorized vehicle, an animal, or other *device, instrument,* material or substance, **which in the manner it is used** or is intended to be used **is reasonably capable of producing death or serious bodily injury.**

(Emphasis added.) Each defendant also submitted Jury Instruction No. 6, which the district court appropriately labeled "a theory

of the case" instruction on behalf of both defendants:

> You are instructed you should not consider a beer bottle to be a deadly weapon unless you are convinced beyond a reasonable doubt, in each case, the beer bottle was of such substance and was used in such a manner as to be reasonably capable of producing death or serious bodily injury.

> If you cannot **find beyond a reasonable doubt that the beer bottle was used in such a manner** or was intended to be used in a manner **reasonably capable of producing death or serious bodily injury** then you should find the defendants not guilty of Aggravated Assault and Battery.

(Emphasis added.)

Both jury instructions adequately convey the definition of deadly weapon found in the Wyoming Criminal Code of 1982. Wyo. Stat. § 6–1–104(a)(iv) (Cum.Supp.1995). We find no error insofar as foreknowledge is unnecessary to a finding that "the manner [in which the weapon] is used * * * is reasonably capable of producing death or serious bodily injury[.]" Wyo. Stat. § 6–1–104(a)(iv). Inelegant and truncated though the prosecutor's statement may have been, she did not misstate the law.

## B. PROSECUTORIAL CONDUCT NOT SUBJECT TO OBJECTION AT TRIAL

■ The plain error analysis employed when alleged prosecutorial misconduct is not subject to timely objection requires the party alleging error to show violation of a clear and unequivocal rule of law, clearly reflected in the record, which violation abridges a substantial right of the party alleging error to his material prejudice. *Warhawk v. State*, 849 P.2d 1326, 1327 (Wyo.1993) (*quoting Rands v. State*, 818 P.2d 44, 48 (Wyo.1991)).

■ During direct examination of Arevalo by **his** counsel, the following exchange occurred:

> Q Of those 15 or 20 fights [Arevalo admitted to being in], are you saying that those are—how would you characterize those fights?

> A Those are good fights, real fights, not—I mean when I say "fight," I mean real fight.

> Q What do you mean by "real fight?"

> A Where you beat each other up.

> Q How does a real fight end?

> A With him begging you to get off of him * * *.

The prosecutor built upon these admissions during her cross-examination before declaring, in closing argument: Arevalo admitted "that he liked torturing people until they couldn't take it anymore." While that particular characterization of the evidence was a hard blow, it was not a foul one given evidentiary support from Arevalo's own testimony. *Barela v. State*, 787 P.2d 82, 83 (Wyo.1990) (*quoting Berger v. United States*, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)). Absent violation of a clear and unequivocal rule of law, we find no plain error.

Arevalo briefly identifies three other statements of the prosecutor but is content to label them "minor improprieties." Concurring with that characterization, we are disinclined to belabor the issue. The balance of Arevalo's attacks upon the prosecutor come well within those matters already covered and are so clearly *de minimis* as not to warrant discussion.

More important to our decision is the overall tenor of the prosecutor's statements and general demeanor throughout the trial. There is little or none of the brinkmanship which has given us pause in other cases where the evidence for guilt was otherwise strong. *See Curl v. State*, 898 P.2d 369, 376 (Wyo.1995). This was an earnest and vigorous prosecution in which the prosecutor may have struck hard blows, but manifestly stopped short of striking foul ones. *Berger*, 295 U.S. at 88, 55 S.Ct. at 633.

## C. CONSISTENCY OF VERDICTS

■ Arevalo was convicted of aggravated battery for smashing a beer bottle against the side of Kukuchka's skull, inflicting potentially life-threatening injury. Arevalo claims this conviction is flawed because his co-defendant also hit Kukuchka in the head with a beer bottle, but was convicted only of bat-

tery. The jury, Arevalo argues, returned mutually exclusive verdicts, labeling a beer bottle used in blows to the head a dangerous or deadly weapon in one instance but not in the other.

The facile appeal of this argument quickly loses its luster with the observation that it was for the jury, as finders of fact, to decide whether or not the beer bottles, as separately employed by Arevalo and his co-defendant, were deadly weapons. *Evanson v. State,* 546 P.2d 412, 418 (Wyo.1976). The particular manner of use can transform something as seemingly inoffensive as a shoe into a "deadly weapon." *Warren v. State,* 835 P.2d 304, 308–09 (Wyo.1992).

Taken alone, the severity of the injuries inflicted by Arevalo was sufficient to justify a factual finding that the manner in which he used *his* beer bottle rendered it "reasonably capable of producing death or serious bodily injury[.]" Wyo. Stat. § 6–1–104(a)(iv). By contrast, only several hours after the wounds inflicted by Arevalo had been stitched did Kukuchka notice what he *and* his physician had previously overlooked: bodily injury from the co-defendant's blow in the form of a lump on the top of his head. Given the great disparity of injuries inflicted, a reasonable jury could clearly have differentiated the manner in which Arevalo and his co-defendant *used* the same instrumentality sufficiently to find that instrumentality a deadly weapon in one instance but not in the other.

Past the inquiry as to whether the jury might *reasonably* find as they did, any dogmatic requirement for consistency of verdicts, given the complex factual scenario, would amount to an impermissible invasion of a jury's decision making process. *Howell v. Garcia,* 747 P.2d 1140, 1143 (Wyo.1987).

> Too many possibilities exist, and any delineation of the possible reasons for the jury verdict would reveal "the impracticality, if not infeasibility, of adjudging what 'facts' were resolved by the jury in favor of the defendants." *United States v. Mulherin,* 529 F.Supp. 916, 939 (S.D.Ga.1981), *aff'd* 710 F.2d 731 (11th Cir.1983) * * *.

*Eatherton v. State,* 810 P.2d 93, 98–99 (Wyo. 1991).

The jury's disparate verdicts actually represent a partial victory for the defense team in their efforts to convince the jury that neither defendant used his beer bottle as a deadly weapon. Both defendants endeavored to portray themselves to the jury as forthcoming but contrite—anxious to overcome recreant lifestyles which they had since renounced. That it was his co-defendant, rather than Arevalo, who became the beneficiary of the jury lenity to which both had aspired does not negate solid evidentiary support in the record for Arevalo's conviction.

## V. CONCLUSION

Whether the subject of a contemporaneous objection or not, the instances of prosecutorial misconduct alleged by Arevalo, taken individually or collectively, do not begin to approach the sort of error without which the jury might have rendered a more lenient verdict. Holding that Arevalo received a fundamentally fair trial marked by proof of his offenses beyond a reasonable doubt, we affirm his convictions.