Eric L. MINTUN, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 97–101.

Supreme Court of Wyoming.

Sept. 25, 1998.

Sylvia L. Hackl, State Public Defender; and Donna D. Domonkos, Appellate Counsel, for Appellant.

William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Kimberly A. Baker–Musick, Assistant Attorney General; Theodore E. Lauer, Director, Prosecution Assistance Program; and S. Decker Cannon, Student Intern, Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

TAYLOR, Justice.

After a deadly car accident claimed the life of Charles Pennington and left Eric Mintun

* Chief Justice at time of oral argument.

seriously injured, with no recollection of the accident or prior events, Eric Mintun was charged with aggravated homicide by vehicle in violation of Wyo. Stat. § 6–2–106(b)(i) (1997). Both Charles Pennington and Eric Mintun were ejected from the vehicle during the accident; thus, the only issue at trial was who was driving the car when it crashed. The jury determined Eric Mintun was driving, leading to a guilty verdict. We affirm.

## I. ISSUES

Appellant, Eric L. Mintun (Mintun), raises four issues:

ISSUE I.

Was the Appellant denied a fair trial when the court allowed the admission of a computerized recreation of the accident into evidence over objection?

ISSUE II.

Was the Appellant denied a fair trial when the State had a second expert witness give cumulative testimony for the purpose of bolstering the credibility of its main witness, Sergeant Kourbelas?

ISSUE III.

Was the Appellant denied a fair trial as guaranteed by the due process clauses of the United States and Wyoming Constitutions because of prosecutorial misconduct during the closing argument?

ISSUE IV.

Was the Appellant denied a fair trial when the trial court allowed the State's expert witness to impeach the Appellant's expert witness before he testified?

The State phrases the issues as:

I. Did the district court properly admit a computer animation of the automobile crash that killed the victim?

II. Did the district court err in permitting the State's expert witness, John Kwasnoski, to testify over Appellant's objection that the testimony was cumulative?

III. Did counsel for the State commit prosecutorial misconduct in closing argument?

IV. Did the district court properly permit the State's expert witness, during the State's case-in-chief, to comment upon the conclusions made by Appellant's expert witness in his oral pretrial report?

## II. FACTS

After a night of heavy drinking, Mintun and two of his friends, Charles Pennington (Pennington) and Brian Chapman (Chapman), decided to go hunting. Around 5:00 a.m. on October 8, 1995, the three friends stopped at Mintun's home where he traded his pickup for his girlfriend's car. They left Mintun's home with Mintun driving, Chapman in the back seat, and Pennington asleep in the front passenger's seat. A few minutes later, they stopped at the home of one of Chapman's friends, Charlotte Mudd. Concerned that the men were too intoxicated to hunt safely, Ms. Mudd tried to persuade them to stay at her home and "sleep it off." Making perhaps the wisest decision of his life, Chapman agreed to stay. Mintun became angry at Chapman, and drove off "like a bat out of hell." Pennington remained asleep in the car during this visit to Ms. Mudd's residence, and was still sleeping when they left.

Sometime prior to 7:20 a.m., the car failed to negotiate a curve. Traveling at approximately forty miles per hour, the car jumped the curb, struck a street sign, and collided with a light pole. The car rolled and turned, eventually coming to a stop on its top and facing the direction from which it had come. Both Pennington and Mintun were ejected from the car, with Mintun landing in the street and Pennington next to the car's final stopping place. Pennington died at the scene and Mintun sustained serious life-threatening injuries. Police were notified of the crash at 7:20 a.m., and arrived shortly thereafter.

Sergeant Neil Kourbelas investigated the accident. None of those who stopped to assist had seen the crash occur and Mintun's injuries left him unable to recall the accident.[1] Thus, Sergeant Kourbelas had no witness accounts of how the crash occurred or who was driving. Using his education and experience in accident reconstruction, Sergeant Kourbelas attempted to reconstruct the accident from the evidence he collected at the site, coming to the conclusion that Mintun had been driving.

At trial, Sergeant Kourbelas testified as to his investigation and reconstruction of the accident. The State also presented John Kwasnoski (Kwasnoski), a physics professor who also specializes in accident reconstruction. Using Sergeant Kourbelas' investigation results and his own personal observation of the damaged vehicle, Kwasnoski did his own reconstruction of the accident. He too came to the conclusion that Mintun had been driving. Kwasnoski testified that his reconstruction depended upon mathematical computations and the laws of physics, differing from Sergeant Kourbelas' reconstruction which was based upon experience. Over Mintun's objection, Kwasnoski was also allowed to compare his conclusions with those of Milo Beaver (Beaver), the expert hired by Mintun. Although Mintun's expert had not yet testified, Kwasnoski refuted the conclusions Beaver had stated prior to trial.

The State also offered the testimony of Nathaniel Huff (Huff), an eyewitness to the accident who did not come forward until shortly before trial. Huff explained his location at the time of the accident, and related his version of what had occurred. Huff testified that he saw Mintun ejected from the vehicle. Huff's calculation of Mintun's point of ejection was the same point at which Kwasnoski had calculated Mintun's ejection was most likely. However, Huff also testified that Mintun was ejected from the passenger's side of the car, and that he had seen Pennington gripping the steering wheel while the accident was in progress.

Finally, the State used a computer-generated video animation of the accident as a demonstrative exhibit during Sergeant Kourbelas' testimony. The animation showed the accident from three different vantage points: a top, or helicopter, view; a

---

1. Mintun's inability to recall the accident or the night preceding continued through the time of trial. His rehabilitation therapist testified that this amnesia will most likely be permanent.

side view; and what was termed the witness view. Marvin Larsen, the animator responsible for this exhibit's creation, testified he used measurements and other information provided by Sergeant Kourbelas, and the animation was intended to present Sergeant Kourbelas' reconstruction of the accident from the three different vantage points. Sergeant Kourbelas affirmed this intent, and specifically testified the "witness view" was intended to present what he believed an eyewitness would have seen from Huff's vantage point, not what Huff claimed to have actually seen. The witness view was inconsistent with Huff's testimony, showing the car spinning before Mintun was ejected. Sergeant Kourbelas explained his theory that, although Huff accurately placed the point and time of ejection, Mintun was actually ejected from the driver's side after the car had spun around.

In his defense, Mintun called Beaver, a mechanical engineer who is also an accident reconstructionist. Beaver testified he used Sergeant Kourbelas' investigation results along with his own measurements and observations of the vehicle and accident site in reconstructing the accident. It was Beaver's opinion that Pennington was driving the car when the accident occurred.

During closing arguments, Mintun objected to references by the State's attorney to a lack of evidence supporting the defense theories. The prosecutor also used the phrases "I think" twice and "I believe" once during his rebuttal closing.

The jury found Mintun guilty. He was sentenced to not less than three nor more than eight years in the Wyoming State Penitentiary.

## III. STANDARD OF REVIEW

■ Mintun claims as error the admission into evidence of the computer-generated animation showing Sergeant Kourbelas' reconstruction of the accident, and also contends various additional errors in the admission of expert testimony. Admission of expert testimony, rulings on the scope and manner of the expert's examination, and questions regarding the cumulative nature

and relevancy of the testimony are all within the discretion of the district court. *Witt v. State*, 892 P.2d 132, 137 (Wyo.1995); *Lindsey v. State*, 725 P.2d 649, 656 (Wyo.1986).

"Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. * * * *"

*Vaughn v. State*, 962 P.2d 149, 151 (Wyo. 1998) (*quoting Martin v. State*, 720 P.2d 894, 897 (Wyo.1986)).

■ Mintun also contends the prosecutor made inappropriate comments during closing arguments, denying him a fair trial.

Claims of prosecutorial misconduct are settled by reference to the *entire* record and hinge on whether a defendant's case has been so prejudiced as to constitute denial of a fair trial. * * * Similarly, the propriety of any comment within a closing argument is measured in the context of the *entire* argument. * * * A trial court's rulings as to the scope of permissible argument will not be disturbed absent a "clear or patent" abuse of discretion. * * * Even then, reversal is not warranted unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict. * * * Failing to timely object to an improper closing argument, the appellate threshold for reversal is "a substantial risk of a miscarriage of justice."

*Arevalo v. State*, 939 P.2d 228, 230 (Wyo. 1997) (*quoting Mayer v. State*, 618 P.2d 127, 132 (Wyo.1980) and *Dice v. State*, 825 P.2d 379, 384 (Wyo.1992)) (emphasis in original).

## IV. DISCUSSION

### A. THE COMPUTER-GENERATED ANIMATION

■ Initially, Mintun asserts the district court should not have permitted the jury to view the computer-generated animation of Sergeant Kourbelas' accident reconstruction. Specifically, he argues that the animation was not properly authenticated because it did not accurately present what Huff claims to have seen as an eyewitness to the accident.

■ We have not previously considered the admissibility of a computer-generated animation. However, we see no reason to depart from long-standing rules of evidence in determining whether such an exhibit is admissible. Evidence is admissible when it is authenticated, relevant, and not subject to an exclusionary rule. *Barnes v. State*, 858 P.2d 522, 526 (Wyo.1993). Pursuant to W.R.E. 901(a), authentication is accomplished by showing that the evidence in question is what its proponent claims. Here, the State offered the computer animation to show Sergeant Kourbelas' reconstruction of the accident from three vantage points, including the point at which Huff watched the accident occur. The animator's testimony as to how the animation was created, combined with Sergeant Kourbelas' testimony on the methods used in reconstructing the accident and his intent to show only his reconstruction, not Huff's version, are sufficient to authenticate this exhibit.

■ Joining those jurisdictions which hold that an animated reconstruction of an accident is admissible so long as it does not offend the rules of evidence, we find no abuse of discretion in the admission of such evidence here. *See, e.g., People v. McHugh*, 124 Misc.2d 559, 560, 476 N.Y.S.2d 721, 722–23 (1984); and *State v. Clark*, 101 Ohio App.3d 389, 416–17, 655 N.E.2d 795, 811–12 (1995).

### B. TESTIMONY OF TWO EXPERTS

■ Mintun's second issue calls into question the State's use of two expert witnesses in the field of accident reconstruction. His only complaint is that Kwasnoski's testimony was cumulative of Sergeant Kourbelas' and was, therefore, solely for the purpose of improperly enhancing Sergeant Kourbelas' credibility. Providing little cogent argument on this issue, Mintun's argument seems to be that the basis of Kwasnoski's testimony was Sergeant Kourbelas' measurements and police reports, and, therefore, Kwasnoski's opinion merely restated Sergeant Kourbelas' theories of how the accident occurred.

■ There is no rule limiting the number of witnesses a party may call on a particular fact or issue. W.R.E. 403 permits a trial court to exclude relevant evidence for "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." This rule is to be used sparingly, because it excludes evidence which is concededly relevant and probative. *Towner v. State*, 685 P.2d 45, 49 (Wyo.1984).

■ Kwasnoski's mathematical conclusions, consistent with Sergeant Kourbelas' theories, served to corroborate Sergeant Kourbelas' testimony. Corroborative evidence, however, is not needlessly cumulative evidence. *See Dallenbach v. State*, 562 P.2d 679, 682 (Wyo.1977). The testimony of Sergeant Kourbelas and Kwasnoski varies in that Sergeant Kourbelas was not able to perform the mathematical calculations necessary to ensure that his theories were consistent with the laws of physics. Kwasnoski was able to perform these calculations, and did so using Sergeant Kourbelas' measurements. Sergeant Kourbelas and Kwasnoski enjoy different areas of expertise, and each presented testimony consistent with his area. Kwasnoski's testimony was not needlessly cumulative.

Nor did Kwasnoski improperly vouch for Sergeant Kourbelas' credibility. Mintun admits it was proper for Kwasnoski to use the sergeant's facts and figures to reach a conclusion, but cries foul because the conclusion reached was the same as Sergeant Kourbelas'. This argument is the product of Mintun's mistaken notion that it is improper for a party to call two expert witnesses whose opinions are the same. The argument is lacking in substance and completely without merit.

We find no abuse of discretion in permitting both Sergeant Kourbelas and Kwasnoski to testify regarding their separate reconstructions of the accident.

### C. PROSECUTORIAL MISCONDUCT

Mintun next contends the prosecutor made inappropriate statements during closing argument, denying him a fair trial. When reviewing a claim of prosecutorial misconduct, we consider the closing argument in its entirety and do not take specific statements out of context. We also consider the closing argument in the context of the entire trial

record, keeping in mind that the trial judge is in the best position to assess the appropriateness of the prosecutor's comments. *Fales v. State,* 908 P.2d 404, 410 (Wyo.1995) (*quoting Taul v. State,* 862 P.2d 649, 659 (Wyo. 1993) and *Smith v. State,* 880 P.2d 573, 574 (Wyo.1994)).

Initially, Mintun claims that eight statements made by the prosecutor over objection from the defense constituted personal attacks on defense counsel or were improper comments on the role of defense counsel to "create reasonable doubt." The aggregate of these statements, according to Mintun, is to shift the burden of proof to the defense. The State counters that the statements were not improper, but were part of a vigorous, legitimate attack on Mintun's theory of the case and on the evidence he presented in support of this theory.

■ Typical of the statements to which Mintun objects is the following:

> *Ladies and gentlemen, like I said, in any case, it's the Defense's job to try to create doubt, and I suggest when that exists, the reasonable doubt—any doubt in this case cannot exist in the real world.* You compare that evidence and the physical evidence. Any doubt in this case exists in a world where people drink themselves sober, drivers drive cars while they're upside-down, people get better driving after they drink, and the law of conservation of energy is suspended. That's where the reasonable doubt exists in this case.

(Emphasis added.) Mintun objects only to the bold portion of this paragraph. Standing alone, this sentence might be read to place a burden of proving reasonable doubt on the defense. The remainder of the statements in this paragraph, however, are a fair rendition of the evidence presented in Mintun's defense, and this paragraph is one of several discussing the evidence in detail. The perhaps inartful introductory statement of this paragraph, when read in the context of the complete argument, is one small part of an appropriate argument.

The flaws in the remaining statements listed by Mintun as improper are similarly innocuous. While some statements could have been better phrased by the prosecutor, even when taken together, these comments do not have the effect of shifting the burden of proof. Thus, there is no " 'clear or patent' " abuse of discretion in the district court's rulings. *See Arevalo,* 939 P.2d at 230 (*quoting Mayer,* 618 P.2d at 132).

■ Mintun's second complaint is that the prosecutor improperly inserted his credibility into his closing argument by use of the phrases "I believe" and "I think." Since there was no objection to these comments, we will review for plain error, and reverse only if we find a substantial risk of a miscarriage of justice. *See Arevalo,* 939 P.2d at 230 (*quoting Dice,* 825 P.2d at 384).

■ A prosecutor may not assert his credibility or personal belief into his closing argument because he may be perceived by the jury as an authority whose opinion carries greater weight than their own opinion. *Barela v. State,* 787 P.2d 82, 83–84 (Wyo. 1990). We have recognized that "I believe" and "I think" are commonly used, colloquial phrases; a prosecutor's inadvertent and infrequent use of these phrases is not prejudicial. *Browder v. State,* 639 P.2d 889, 895 (Wyo.1982).

Here, the prosecutor used "I think" twice and "I believe" once during the course of a closing argument which consumes approximately sixty-three pages of the record. These isolated comments are not an attempt to persuade the jury to convict Mintun based upon the prosecutor's personal belief and his credibility as an employee of the state. They are simply part of an argument pointing out reasonable inferences which may be drawn from the evidence. Certainly, they do not present a substantial risk of a miscarriage of justice.

Closing arguments are meant to be just that, arguments premised upon the evidence already submitted to the jury. Prosecutors are no more limited in their closing than defense counsel. They may review the evidence and suggest to the jury inferences based thereon. The purpose of closing arguments is to allow counsel to offer ways of viewing the significance of the evidence.

*Browder,* 639 P.2d at 893. *See also Ross v. State,* 930 P.2d 965, 971 (Wyo.1996).

There is no error in the prosecutor's closing argument.

### D. IMPEACHMENT TESTIMONY

 Mintun's final contention is that, during his direct examination, Kwasnoski was improperly permitted to impeach Beaver's theories. Mintun argues that Kwasnoski should not have been permitted to discuss Beaver's theories until after Beaver, himself, had presented them to the jury.

Two evidentiary rules guide our decision. W.R.E. 611(a) states:

The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

W.R.E. 703 states:

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

 Prior to trial, Kwasnoski and Beaver talked on the telephone and discussed Beaver's theories of how the accident occurred, although Beaver had not yet completed his analysis. During his direct testimony, Kwasnoski related this conversation and testified he reviewed his own conclusions after talking with Beaver, considering Beaver's theories. Kwasnoski told the jury why his opinions did not change in light of Beaver's analysis and why he had rejected Beaver's theories. It is not improper for an expert witness to comment upon the methods and opinions of other experts. *See Hayes v. State,* 599 P.2d 558, 564 (Wyo.1979). An expert's use of another's methods and opinions in formulating, reviewing, or revising his own conclusions is permitted by W.R.E. 703.

 In addition, the district court is responsible for an orderly trial progression. This includes the scope and manner of witness examinations. *Lindsey,* 725 P.2d at 656. We find no abuse of discretion in permitting the State's expert witness to comment during his direct testimony upon the opinion Mintun's expert witness expressed orally prior to trial.

## V. CONCLUSION

The record in this case presents what appears to be a hard fought battle with capable attorneys on both sides. The jury was asked to make difficult, probably agonizing, findings of fact. Mintun is understandably disappointed in the outcome; however, he clearly received a fair trial in a well-run courtroom. This case was for the jury to decide, and we see nothing that interfered with their responsibility. The verdict is affirmed.