Jose MARQUEZ, Appellant, (Defendant),

v.

The STATE of Wyoming,
Appellee, (Plaintiff).

No. 99–263.

Supreme Court of Wyoming.

Oct. 31, 2000.

Representing Appellant: Tom Sedar, Casper, WY; and Paul J. Kennedy and Adam S. Baker, Albuquerque, NM.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General, Cheyenne, WY.

Before LEHMAN, C.J., and THOMAS, MACY,* GOLDEN, and HILL, JJ.

THOMAS, Justice.

The major question raised by Jose Marquez (Marquez) is that the trial court lacked the requisite subject matter jurisdiction to try him for conspiracy. Marquez was convicted of conspiracy to deliver a controlled substance; conspiracy to possess a controlled substance with intent to deliver; and conspiracy to possess a controlled substance, all in violation of Wyo. Stat. Ann. § 35–7–1031 (Michie 1997) and Wyo. Stat. Ann. § 35–7–1042 (Lexis 1999). Marquez asserts that, since the conspiracy was not entered into in Wyoming, and he committed no criminal acts in this state, Wyoming could not try him for conspiracy. The plain language of the statute renders an individual member of a drug conspiracy criminally liable, even if that individual commits no overt act, and the partic-

* Retired June 2, 2000.

ipation of one co-conspirator in this state provides a sufficient basis for jurisdiction over all members of a drug conspiracy. Marquez also presents issues regarding the sufficiency of the evidence and prosecutorial misconduct. We cannot discern error in any of his contentions. We affirm the Judgment and Sentence entered in the trial court.

In the Appellant's Brief in Chief, Marquez presents this Statement of Issues:

I. Was the evidence presented at trial sufficient to support defendant's conviction?

II. Did the State of Wyoming have subject matter jurisdiction over the charged conduct?

III. Did the prosecutor commit intentional misconduct without which defendant may have enjoyed a more favorable verdict?

In the Brief of Appellee, filed by the State, the issues are set forth in this way:

I. Was appellant properly convicted in Natrona County of the crime of conspiracy?

II. Was appellant denied a fair trial by the prosecutor's alleged misconduct?

On January 3, 1998, on Interstate Highway 25 south of Pueblo, Colorado, a state trooper encountered a northbound pickup truck bearing New Mexico license plates. The trooper's attention was drawn to the vehicle because it was weaving onto the shoulder of the road, and he stopped the pickup and spoke with Marquez, who was driving. The circumstances aroused suspicion on the part of the trooper that Marquez might be transporting illegal narcotics, and he asked for permission to search the vehicle. Several lengths of PVC pipe, each with one end capped and one end taped shut, were in a toolbox mounted on the truck. The trooper asked Marquez what was in them, and he responded that they contained clothing. The trooper then checked the contents and found about eighty-six pounds of marijuana packed in the pipes. Marquez was arrested and informed of his constitutional rights. A subsequent search of his person, incidental to that arrest, turned up a folded piece of paper with a Casper telephone number written on it.

Upon being questioned, Marquez initially told investigating officers that he was engaged to deliver the drugs to a cantina in Denver, Colorado, but he could provide neither the name nor the location of that establishment. He denied any knowledge of the Casper telephone number, suggesting that his wife had put the paper in his pocket. When confronted with inconsistencies in his story, Marquez then admitted that an individual in New Mexico had offered him $3,000.00 to transport the marijuana to Casper. When he arrived in Casper, he was to call Javier Moreno at the telephone number on the paper to arrange a delivery.

Marquez agreed to assist the Colorado officers in making a controlled delivery of the marijuana. The officers drove Marquez' pickup to Casper, and met with federal agents and local law enforcement officers there. Marquez then called Moreno and arranged to meet him at a particular store. The officers took Marquez to the meeting place in his truck and left him alone in the truck without an ignition key. Moreno arrived in another vehicle and signaled to Marquez to follow him. When Marquez did not follow as directed, Moreno left the scene, but was stopped and arrested a few blocks away. A search of Moreno's person produced a business card with Marquez' name and telephone number written on the back. While searching Moreno's residence, pursuant to a warrant, officers located $3,000.00 in cash.

Marquez was charged in Wyoming with one count each of conspiracy to deliver a controlled substance, conspiracy to possess a controlled substance with intent to deliver, and conspiracy to possess a controlled substance. He pled not guilty to all counts. His trial took place on September 21 and 22, 1998, and the jury found him guilty on all three counts. The trial court, in its Judgment and Sentence, imposed concurrent terms of not less than forty-two months and not more than 120 months on each count of which Marquez was convicted. Marquez filed a timely notice of appeal to this Court.

The most significant question in this case is argued by Marquez as his second issue.

Marquez contends that his conviction cannot stand because Wyoming did not have subject matter jurisdiction for the offenses with which he was charged. The theory driving this contention is that no actual crime took place in Wyoming because the conspiracy was entered into in New Mexico and Marquez was arrested in Colorado. He argues that absent any activity by him in Wyoming in furtherance of the conspiracy, Wyoming cannot exercise jurisdiction.

The Wyoming drug conspiracy statute is derived from the Federal Comprehensive Drug Abuse Prevention and Control Act of 1970, which is codified at 21 U.S.C. § 846. Federal decisions interpreting the federal statute are persuasive authority in our decisions interpreting the state statute. *Palato v. State*, 988 P.2d 512, 514 (Wyo.1999). Federal courts have determined that the United States has jurisdiction over drug conspiracies with an intended effect in this country, even if no action in furtherance of the conspiracy took place in the United States. The federal judiciary has reasoned that because no overt act is needed to complete the crime, the federal statute is violated as soon as individuals agree to bring drugs into this country. Therefore, federal prosecutors must prove the intent of the conspirators to consummate their conspiracy in the United States, but need not prove that the conspirators took any action within United States territory. *United States v. Loalza–Vasquez*, 735 F.2d 153, 156 (5th Cir.1984) ("jurisdictional requisites with regard to the controlled-substance conspiracy counts may be satisfied merely by proof of intended territorial effects within the sovereign territory of the Untied States."); *United States v. Jonas*, 639 F.2d 200, 205 (5th Cir.1981) ("[w]here a conspiracy statute does not require proof of overt acts, the jurisdictional requirement that the proscribed acts have an effect within United States territory may be satisfied by evidence that the conspirators intended their conspiracy to be consummated within United States territory."). Persuaded by these federal precedents, we hold that the trial courts of Wyoming have subject matter jurisdiction over drug conspiracies when the conspirators intend for the conspiracy to have an effect within the state of Wyoming.

We can also confirm the state's jurisdiction without result to federal authority. In an analogous situation, we held that Wyoming courts have subject matter jurisdiction to try an individual for failure to return a minor to the custody of the person entitled thereto, even though neither the defendant nor the child had ever been in Wyoming. *Rios v. State*, 733 P.2d 242, 249–50 (Wyo.), *cert. denied*, 484 U.S. 833, 108 S.Ct. 108, 98 L.Ed.2d 68 (1987). The basic premise for that decision was the fact that the conduct with which Rios was charged had its effect within the state of Wyoming. Clearly, the conduct with which Marquez was charged would have had its effect in the state of Wyoming.

An important premise here, as elsewhere in this opinion, is that the agreement is the crime because no overt act is required. *Palato*, 988 P.2d at 515. The evidence demonstrated that both Marquez and Moreno were part of a conspiracy to possess and deliver drugs in Wyoming. Moreno continued to be a member of the conspiracy while he was in Wyoming. That fact is established because he did not communicate a withdrawal to the authorities or to his co-conspirators. In addition, his continued participation in the conspiracy is evidenced by his possession of Marquez' name and telephone number on his person and his accumulation of $3,000.00 in cash, the precise amount Marquez was to be paid for delivering the drugs. It is well established that each member of a conspiracy is criminally accountable for the acts of every other member. 16 Am.Jur.2d *Conspiracy* § 19 (1988). Therefore, another justification for jurisdiction over Marquez for conspiracy is Moreno's participation in the conspiracy while in Wyoming.

Turning to Marquez' first assignment of error, he contends that the evidence presented at trial was not sufficient to support his conviction. Our standard for reviewing the sufficiency of the evidence in a criminal matter is:

"[W]hether all the evidence which was presented is adequate enough to form the basis for a reasonable inference of guilt

beyond a reasonable doubt to be drawn by a finder of fact when that evidence is viewed in the light most favorable to the State."

*Wentworth v. State*, 975 P.2d 22, 25 (Wyo. 1999) (*quoting Bloomquist v. State*, 914 P.2d 812, 823 (Wyo.1996)).

Marquez first argues that he never conspired with Moreno. He claims that he agreed with the drug supplier in New Mexico to deliver the drugs to Moreno, and Moreno agreed with the supplier to receive the drugs, but he and Moreno had no agreement. That argument fails to persuade this Court for two reasons. First, neither the criminal information nor the jury instructions specify whom Marquez conspired with. Marquez' admitted agreement with the supplier is a conspiracy, and his statements to the police are sufficient to support a conclusion by the jury that he conspired with the supplier. Second, there is no requirement that all members of a conspiracy have direct contact with one another. We look again to federal decisions concerning sufficiency of the evidence to sustain a conviction for conspiracy. In *United States v. Monroe*, 73 F.3d 129, 131 (7th Cir.1995) (*quoting United States v. Shorter*, 54 F.3d 1248, 1255 (7th Cir.1995)), the court said, "[a]ll that is required is that 'a participant know of the others' existence and their activities to further the conspiracy.' "

In his second challenge to the sufficiency of the evidence, Marquez contends that he voluntarily withdrew from the conspiracy and thwarted its success by cooperating with law enforcement officers. Like its federal counterpart, Wyoming's drug conspiracy statute does not require that any of the conspirators commit an overt act in furtherance of the conspiracy; the crime of conspiracy is completed when the conspirators agree. *Palato*, 988 P.2d at 515. Several federal courts have concluded that withdrawal is not a valid defense to a drug conspiracy charge because the crime already has been committed and, therefore, cannot be thwarted. *United States v. Diaz*, 176 F.3d 52, 99 (2nd Cir.), *cert. denied*, 528 U.S. 875, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999) (*quoting United States v. Salameh*, 152 F.3d 88, 151 (2nd Cir.1998), *cert. denied*, 525 U.S. 1112,

119 S.Ct. 885, 142 L.Ed.2d 785 (1999)) ("where there is substantial evidence of a defendant's participation in the conspiracy * * *, 'the significance of his withdrawal relates only to the * * * subsequent acts and declarations of coconspirators.' "); *United States v. Grimmett*, 150 F.3d 958, 961 (8th Cir.1998); *United States v. Thomas*, 114 F.3d 228, 267 (D.C.Cir.), *cert. denied*, 522 U.S. 1033, 118 S.Ct. 635, 139 L.Ed.2d 614 (1997) (a member of a conspiracy may be absolved of his co-conspirators' acts committed after his withdrawal); *United States v. Rogers*, 102 F.3d 641, 644 (1st Cir.1996), *cert. denied*, 522 U.S. 879, 118 S.Ct. 203, 139 L.Ed.2d 140 (1997) ("withdrawal is not a defense to a conspiracy charge if the conspiracy violation has already occurred."); *United States v. Gonzalez*, 797 F.2d 915, 916–17 (10th Cir.1986) ("[e]ffective withdrawal is limited to future crimes the remaining conspirators might commit.").

Marquez' violation of the drug conspiracy was complete before he was arrested and agreed to cooperate with law enforcement officials. For that reason, we need not consider whether his cooperation constituted an actual withdrawal from the conspiracy. Even if he did effectively withdraw, he may be absolved of subsequent acts of the remaining conspirators, but not of the completed crime of conspiracy. Marquez' claim of insufficient evidence is thus unavailing.

In his final assignment of error, Marquez alleges several acts of prosecutorial misconduct, without which he argues he might have enjoyed a more favorable verdict. Marquez asserts prosecutorial misconduct in a statement the prosecutor elicited from one witness, and in three statements in the State's closing argument. During the State's direct examination of the Colorado state trooper who arrested Marquez, the following exchange took place:

Q Now, at that time, were there any difficulties with his license or registration?

A No. Everything was fine.

Q Did you return those to him?

A Yes, I did.

Q Prior to returning them to him, did you have any other conversation with him besides what we've discussed here today?

A We—when I finished running the driver's license, he was clear. It was valid. The vehicle was listed to him, and *he did have a criminal history.*

(Emphasis added.)

In response to the trooper's testimony that Marquez had a criminal history, his defense counsel objected and moved for a mistrial. The prosecutor argued that he had not intended to elicit that testimony, and characterized it as "one rather vague and isolated comment." The trial court said:

I guess I have a concern that there may be some irreparable prejudice or harm here. I feel, perhaps, that it was just a very brief statement. So perhaps admonishment to you and the jury could cover it. I don't know.

The trial judge then addressed the jury:

The record should reflect that I'm sustaining the last objection, and I strongly admonish the jury to disregard the last question and response. The issue that was raised is not relevant to these proceedings or your considerations. And it's on that basis that I sustain the objection.

Although we agree that the trooper's statement was inappropriate, it did not require the grant of a mistrial. First, the prosecutor's claim that he did not intend to elicit such a response rings true because obviously the answer was not responsive to the question he asked. The question was whether the trooper had any further conversation with Marquez, and called for an answer of yes or no. In response, however, the trooper conveyed information that he had received from checking Marquez' driver's license. That was not a response the prosecutor should have reasonably anticipated. Second, the trial court admonished the jury, in no uncertain terms, that they were to disregard the question and answer. "We must assume that the jury followed the court's curative instruction." *Burke v. State,* 746 P.2d 852, 857 (Wyo.1987).

In his closing argument, the prosecutor made the following statements:

[T]he defendant, this man sitting here there is no doubt of that decided to be part of a conspiracy to import a large amount of drugs into your community; no doubt about it.

\* \* \*

That's what the Wyoming legislature intended; not for every coconspirator who got a little shaky when he was arrested and decided to rat everybody off and see if he couldn't get a deal.

 Since no objection to those remarks was forthcoming at trial, we apply the plain error standard of review. *Montoya v. State,* 971 P.2d 134, 136 (Wyo.1998). A plain error analysis requires the appellant to demonstrate the "violation of a clear and unequivocal rule of law, clearly reflected in the record," resulting in the abridgment of a substantial right of the party to his material prejudice. *Arevalo v. State,* 939 P.2d 228, 232 (Wyo.1997). Counsel are afforded considerable latitude in closing arguments, but arguments outside the evidence are not permitted nor are arguments calculated to inflame, prejudice, or mislead the jury. *Montoya,* 971 P.2d at 136.

 The assertion that Marquez engaged in a conspiracy to "import a large amount of drugs into your community" is an accurate, albeit partisan, summary of the evidence. Similarly, the statement that Marquez "decided to rat everybody off and see if he couldn't get a deal," while not phrased in the lofty vernacular of legal scholarship, is a conclusion that one could reasonably draw from the evidence. Marquez contends that those remarks were inflammatory. We recently held that a prosecutor's comparison of a defendant to a "gentlemen pickpocket" did not rise to the level of plain error. *Helm v. State,* 1 P.3D 635, 640 (Wyo.2000). *See also Tennant v. State,* 786 P.2d 339, 346 (Wyo. 1990) (no plain error in closing argument when prosecutor called defendant "a leech, a blood sucker, and a predator on society" and suggested the defendant "might go out and find crippled children to pick on next."). We reject Marquez' claim of plain error.

During his rebuttal argument, the prosecutor said:

Well, ladies and gentlemen, none of the facts have been disputed here. And if they were that obvious, the case would have been dismissed long ago.

Defense counsel immediately lodged an objection. The trial court sustained the objection, and indicated that it would hear a mistrial motion "at the appropriate time." After the jury retired to deliberate, Marquez' trial counsel moved for a mistrial. The trial court reserved ruling on the motion, and later issued a decision letter in which the motion was denied:

Based upon the review and research undertaken, the Court would find that the portion of the prosecution's rebuttal argument objected to was "improper argument." However, the Court did sustain the defense objection to that argument, and in the context of the argument and positions being asserted by the parties at trial, it cannot be said that the prosecutorial argument in question resulted in any actual prejudice to the Defendant to justify the granting of a mistrial. *Distad v. Cubin*, 633 P.2d 167 (Wyo.1981). Further, it cannot be said that the prosecution's comment hereunder review made a fair result impossible or highly unlikely. *Wyoming Trial Handbook*, Brown, et al., 1995. As a result, the motion for mistrial should be denied.

■ This Court reviews denials of mistrial motions stemming from alleged prosecutorial misconduct under our abuse of discretion standard. *Capshaw v. State*, 958 P.2d 387, 390 (Wyo.1998). We have also said:

[T]he propriety of any comment within a closing argument is measured in the context of the *entire* argument. *Virgilio v. State*, 834 P.2d 1125, 1127 (Wyo.1992). A trial court's rulings as to the scope of permissible argument will not be disturbed absent a "clear or patent" abuse of discretion. *Mayer v. State*, 618 P.2d 127, 132 (Wyo.1980). Even then, reversal is not warranted unless a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict. *Trujillo v. State*, 750 P.2d 1334, 1337 (Wyo.1988) * * *.

*Arevalo*, 939 P.2d at 230 (emphasis in original).

Marquez argues that the challenged rebuttal comment "reflected the prosecutor's 'opinion that if there was no evidence to support the charges, the case would not have been tried.' " The State, however, contends that the statement was appropriate to contest "defense counsel's misrepresentations concerning the law and the court's instructions," and "was merely a suggestion to the jury that no controversy would exist for it to decide if the facts and the law were as simple as counsel indicated in his closing argument." In the alternative, the State contends, as the trial court concluded, that the prosecutor's comment was not so prejudicial as to impair Marquez' right to a fair trial.

■ Without question, it is improper for a prosecutor to interject his or her personal opinions as to matters at issue. *Arevalo*, 939 P.2d at 231. It is equally clear that the prosecutor did exactly that in this instance. We agree, however, with the trial court's conclusion that the incident did not make a fair trial impossible or highly unlikely. The comment was isolated and brief, and the trial court immediately sustained an objection. *See Arevalo*, 939 P.2d at 231. In addition, the jury instructions clearly stated that counsels' arguments were not evidence. In light of the direct evidence of Marquez' guilt, it is not likely that he would have enjoyed a more favorable verdict absent the prosecutor's injudicious comment.

Marquez' contentions of reversible error are not well founded, and we affirm the Judgment and Sentence entered in the trial court.

GOLDEN, Justice, dissenting, with whom MACY, J., joins.

I must dissent from the majority's decision that Wyoming has jurisdiction over criminal conspiracies entered into in another state because the conspirators planned to possess and deliver drugs in this state. When a conspiracy does not require an overt act to constitute the offense, the law is well-settled that conspirators commit their offense by the agreement to commit a crime and the state where the agreement is reached has jurisdic-

tion over the offense. *Hyde v. United States,* 225 U.S. 347, 362, 32 S.Ct. 793, 800, 56 L.Ed. 1114 (1912). *Hyde* then decided that overt acts within a jurisdiction allowed prosecution of all conspirators although none of the conspirators had entered the jurisdiction because, by their constructive presence, the crime had an effect in that jurisdiction. *Id.* at 362–363, 32 S.Ct. at 800.

Recognizing that Wyoming's jurisdiction is territorial and does not reach a crime committed outside our borders, *Rios v. State,* 733 P.2d 242 (Wyo.1987), *cert. denied,* 484 U.S. 833, 108 S.Ct. 108, 98 L.Ed.2d 68 (1987), relied upon *Hyde's* constructive presence theory to decide that Rios' criminal failure to return his child to the custodial parent was a crime committed in this state. *Id.* at 249–50. In *Rios,* we decided that Wyoming had jurisdiction over the crime committed even though the defendant was absent from the state at the time that the crime was committed. *Id.* at 250. *Rios* exhaustively examined the various bases for territorial jurisdiction including our decision in *Hopkinson v. State,* 632 P.2d 79 (Wyo.1981), *cert. denied,* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982), but did not, by any means, set the stage for the extension of extraterritorial jurisdiction for conspiracy when the agreement was entered into in another state. *Rios,* 733 P.2d at 245–50.

Unlike *Rios* where a crime was committed in this state by the accused's constructive presence, and unlike drug conspiracies on the high seas where the United States as sovereign has statutorily chosen to extend extra-

territorial jurisdiction, Marquez did not commit criminal conduct in Wyoming under any legislative enactment. The crime was committed in New Mexico and Marquez' constitutionally protected venue rights are implicated. *See United States v. Cabrales,* 524 U.S. 1, 6, 118 S.Ct. 1772, 1775, 141 L.Ed.2d 1 (1998); *see also, Rios,* 733 P.2d at 244–45. Additionally, Wyoming's rules of criminal procedure require that the prosecution shall take place in the county in which the offense was committed. W.R.Cr.P. 18. Marquez was convicted of three counts of conspiracy for agreements to possess and deliver drugs to Wyoming that he made in New Mexico. He committed no crime in Wyoming, and venue in Wyoming is not proper.

For the same reasons, Moreno's participation in the conspiracy while in Wyoming cannot justify jurisdiction over Marquez for the conspiracy. The agreement is the crime, and the crime was completed in New Mexico. Had the authorities not stopped the object of the agreement, the possession and delivery of drugs in this state, then Wyoming certainly would have had jurisdiction over both the conspiracy and the crime. That is not the case here, and it simply goes too far to find that Marquez committed a crime in Wyoming.